## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

**Donna Seeherman, Susan Hirsch, and Maura Cohen, Individually and On Behalf of All Others Similarly Situated,**

                   **Plaintiffs,**

**v.**

**WHIRLPOOL CORPORATION,**

                   **Defendant.**

-----------------------------------------------------------x

**CLASS ACTION COMPLAINT**

**08-CV-7289 (LAK)**

**ECF CASE**

**JURY TRIAL DEMANDED**

JUDGE KAPLAN    08 CIV 7289

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

Donna Seeherman, Susan Hirsch, and
Maura Cohen, Individually and On Behalf of
All Others Similarly Situated,

                                **Plaintiffs,**

v.

WHIRLPOOL CORPORATION,

                                **Defendant.**

----------------------------------------------------------x

**CLASS ACTION
COMPLAINT**



**CV**

**JURY TRIAL DEMANDED**

        Plaintiffs Donna Seeherman, Susan Hirsch, and Maura Cohen, by their attorneys,

Sanford Wittels & Heisler, LLP, bring this class action complaint on behalf of themselves

and all others similarly situated against defendant Whirlpool Corporation, ("Whirlpool"

or the "Company") and allege, upon personal knowledge as to the facts pertaining to

themselves and upon information and belief as to all other matters:

### OVERVIEW OF DEFENDANT WHIRLPOOL'S WRONGFUL ACTS AND BASIS OF THIS ACTION

        1.      This consumer class action for damages and injunctive relief arises from

Defendant Whirlpool's deceptive and unlawful conduct in designing, manufacturing,

distributing, selling, and warranting defective Whirlpool Duet and Duet Sport washing

machines (hereafter the "Products" or "Machines") and its subsequent failure to repair

and/or replace the defective Products. Whirlpool touts itself as the number one United

States manufacturer of washing machines.

2.      Defendant Whirlpool's Duet and Duet Sport Washing Machines contain defects which cause them to generate large quantities of mold and thereby emit a foul and rancid smell.  As a result of these defects, the machines cause clothing, towels and other laundry items to be infused with mold and also emit this noxious odor.  In addition, the mold problem engendered by these Products has caused some class members' homes to be infested with flies and worms, further causing or contributing to health issues for the Classes and their family members.  Defendant's products thus fail in their essential purpose – namely to clean and freshen clothes.

3.      Although Defendant Whirlpool is on notice that its Duet Washing Machine Products contain significant defects which render the machines ineffective for their intended use, the Company continued to market and sell the Machines in a defective condition.  As a result of this wrongful, deceptive and illegal conduct, Defendant passed the expense, difficulty and frustration of replacing the Products along to class members, who purchased the defective machines.

4.      Defendant Whirlpool compounded its wrongful acts by failing to recall the Products or even to replace malfunctioning units in response to many consumer complaints.  Instead of honoring its warranty by repairing or replacing the defective units at its own cost, Defendant has attempted to make more money off the defective machines by selling its customers additional products, including special cleaning tablets, which are supposed to clean the mold from washers.  The Company has advised other self-remedies, but these recommendations have proved largely futile.

5.      Defendant Whirlpool's actions breach express and implied warranties that accompany the Products, breach the covenant of good faith and fair dealing, and violate

state consumer protection statutes in New York and in all states where Whirlpool sells its products. The Company's wrongful acts have caused Plaintiffs and class members to incur loss of use and value of their Duet washing machines and to incur monetary damages associated with the repair and/or replacement of those products, as well as damages to customers' homes and personal property.

6.      Upon information and belief, Defendant's actions have also caused class members and their families to suffer deleterious health effects associated with the defective Products, and may cause or contribute to illnesses or other medical conditions identified or diagnosed at a later date.

7.      Plaintiffs Donna Seeherman, Susan Hirsch, and Maura Cohen seek relief on behalf of themselves and a class of purchasers of Duet washing machines, including: (a) an order certifying that the action be maintained as a class action; (b) an order deeming Plaintiffs the Class Representatives and counsel as Class Counsel; (c) restitution and/or disgorgement of profits; (d) injunctive relief requiring Defendant to repair and/or replace all defective products; (d) compensatory and consequential damages; (e) punitive damages; (f) attorneys' fees; (g) costs of the suit; (h) pre- and post judgment interest; and (i) such other relief as this Court may deem necessary or proper.

## PARTIES

8.      Plaintiff Donna Seeherman ("Ms. Seeherman") is a resident of New York, New York. In or about December 2004, Ms. Seeherman purchased a Duet Front-Loading automatic washer designed, manufactured, distributed, marketed and/or sold by Defendant.

9.      Plaintiff Susan Hirsch ("Ms. Hirsch") is a resident of Scarsdale, New

York. In or about June 2008, Ms. Hirsch purchased a Duet Front-Loading automatic washer designed, manufactured, distributed, marketed and/or sold by Defendant.

10.    Plaintiff Maura Cohen ("Ms. Cohen") is a resident of Pleasantville, New York. In or about May 2006, Ms. Cohen purchased a Duet Front-Loading automatic washer designed, manufactured, distributed, marketed and/or sold by Defendant.

11.    Defendant Whirlpool Corporation ("Whirlpool") is a Delaware corporation with its corporate headquarters in Benton Harbor, Michigan. Defendant is engaged in the business of designing, manufacturing, distributing, marketing, selling and warranting products, both under its own brand name and various other brand names, including the Duet line of washing machines.

## VENUE AND JURISDICTION

12.    This Court possesses federal subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 (109 P.L. 2; 119 Stat. 4; effective February 18, 2005) for the following reasons:

a.    the number of members of the proposed plaintiff class is 100 or more;

b.    there is diversity of citizenship between *any one* member of the plaintiff class (named and unnamed) and the defendant; Plaintiffs Seeherman, Hirsch, and Cohen are citizens of New York while Defendant Whirlpool is a Delaware state corporation; and

c.    the amount in controversy – which may be calculated by aggregating the claims of the class members – *exceeds $5 million.*

13.    Venue is properly placed in this district pursuant to 28 U.S.C. § 1391 (a) (1) and (2). A substantial part of the events and the omissions giving rise to Plaintiffs' claims occurred in this district. Additionally, Whirlpool is deemed to reside in this district because it is subject to personal jurisdiction in the district.

14.    Defendant is amendable to personal jurisdiction in New York State. A

4

substantial portion of the wrongdoing alleged in this Complaint took place in New York State. Whirlpool conducts business within the state sufficient to be considered present in New York.

## GENERAL ALLEGATIONS

15.    According    to    its    website,    http://www.whirlpoolcorp.com/about/ corpfactsheet/default.asp, Whirlpool Corp.:

is a global manufacturer and marketer of major home appliances, with annual sales of more than $18 billion, 73,000 employees and nearly 70 manufacturing and technology centers around the globe. The company markets Whirlpool, Maytag, KitchenAid, Jenn-Air, Amana, Brastemp, Bauknecht, Consul and other major brand names to consumers in more than 170 countries.

16.    Defendant Whirlpool "also is a significant supplier to Sears Holdings Corp., which owns and controls the *Kenmore* brand name," and which is among the largest companies in the United States market for selling and distributing appliances.

17.    Defendant Whirlpool is a publicly held company, traded on the New York Stock Exchange, and is a Fortune 500 company.

18.    Defendant Whirlpool designs, manufactures, markets, distributes, sells and warrants a variety of consumer products, including a line of washing machines intended for residential use. These products include the high-end Duet and Duet Sport line of washing machines, which are front-loading machines marketed as energy-saving and water-saving models.

19.    Upon information and belief, Defendant's Duet washing machines contain various design and manufacturing defects, including the door latch, wax motor, motor control and/or circuit board. Moreover, upon information and belief, the defective machines also cause smaller objects, such as socks, to often become trapped in the seal of

the machines. Due to these inherent defects, and upon information and belief, Duet and Duet Sport washers function improperly and are prone to accumulating excessive mold and mildew which their owners are unable to eliminate. This buildup causes a strong smell – described as an "unbearable" and "sewer-like" "stench" – to permeate "washed" clothes as well as the areas around the laundry room. This "septic tank" odor is transferred to consumers' clothing and other laundry items washed in the machines.

20.    Furthermore, as a result of the mold-causing defects, worms and flies may collect in the drains and hoses of the washers and have been known to spread throughout a consumer's home via the plumbing system. Upon information and belief, both the accumulation of the mold itself and its correlated generation of worms and flies are apt to cause detrimental health consequences to consumers of the Products along with their family members.

21.    By virtue of these defects, the Products fail in their essential purpose. Contrary to Defendant Whirlpool's representations and consumers' reasonable expectations, the defective Products do not produce clean, fresh-smelling laundry without deleterious side effects.

22.    A properly functioning Washing Machine Product is material to the purchase decision of reasonable consumers, including Plaintiffs and class members.

23.    Defendant Whirlpool provides a written warranty with its defective Products that warrants against defects in materials and workmanship. On information and belief, Defendant provided the same or a substantially similar warranty to Plaintiff and class members.

24.    The warranty is an express warranty and became part of the basis of the

bargain.

25.    To receive the benefits of the warranty, customers must use a Whirlpool designated service company to attempt to correct defects. However, upon information and belief, Whirlpool designated companies have been unresponsive to service calls and in many cases have refused to replace defective parts or units. Often, consumers have been forced to use outside service companies or to replace defective Products at their own expense.

26.    Defendant knew or should have been aware of these defects in its Products – particularly as the defects are identical or substantially similar to defects in the Maytag Neptune front-loading line of washers, a comparable if not substantially similar product which was the subject of a large and well-publicized class action settlement in August 2004 (Whirlpool acquired Maytag in April 2006). Moreover, after numerous, exceedingly outraged complaints on the part of its own consumers, Defendant was clearly made aware that these defects and the associated mold problem extended to the Duet and Duet Sport front-loading machines. However, Defendant has intentionally refrained from informing its customers about the existence and nature of the defects.

27.    Instead of removing the defective Product from sales and distribution channels or issuing a Notice of Recall to its customers, Whirlpool has advised self-remedies such as cleaning tablets, using special High Efficiency ("HE") detergent, running periodic washing cycles with bleach, and leaving the door of the machines open when not in use. These recommendations have proved ineffective for most customers; furthermore, they only add to the cost of purchasing and using these expensive and defective Products and do nothing to address their underlying defects.

28.    These proposed self-help measures are insufficient in numerous additional respects.  First, they fail to inform other consumers in any form or manner about the existence and nature of the defects and their potential consequences.  Moreover, they fail to address the remedies available for losses incurred by members of the Class – including those who may have contracted for outside repairs or purchased a replacement product, or whose warranties have expired – or imply that no such remedies exist.

29.    Plaintiff Donna Seeherman purchased a Whirlpool Duet Front-Loading Automatic Washer and Electronic Gas Dryer in or about December 2004.

30.    Ms. Seeherman followed all instructions and recommendations associated with the Product – including using HE detergent (which costs about 50 percent more than ordinary detergent), using monthly cycles of bleach, and leaving the door to the washing machine open when not in use.

31.    Nevertheless, from the time of purchase, Ms. Seeherman's machine has continued to generate brown mold and to emit a foul stink.  Clothing and other laundry items washed in the machine have become infused with a musty odor, and Ms. Seeherman has already had to replace all of the towels in her home.

32.    Plaintiff Susan Hirsch purchased a Whirlpool Duet Front-Loading Automatic Washer in or about June 2008.

33.    Within six weeks of the time of purchase, Ms. Hirsch noticed the abovementioned defects associated with the Product.  Ms. Hirsch's machine generated a stench, and bath mats and towels washed in the machine emitted a "mildew smell."

34.    Ms. Hirsch followed all instructions and recommendations associated with the Product, including leaving the washing machine door open when not in use and

purchasing special tablets to run through the machine. Her machine continues to generate mildew, and Ms. Hirsch must smell each washed article of clothing or laundry before she folds it.

35.      Due to her dissatisfaction, Ms. Hirsh called the Whirlpool customer service number in August 2008, and asked the Company to take back her Duet washing machine. A Whirlpool supervisor refused to take back the machine, claiming that the company had never had any complaints about odors in the washers. Apparently, Whirlpool is instructing its supervisors to engage in a disinformation campaign to customers that is in blatant contradiction of its full notice of the ongoing problems with its washing machines.

36.      Plaintiff Maura Cohen purchased a Whirlpool Duet Front-Loading Automatic Washer in or about June or July 2006.

37.      Shortly thereafter, a constant stench began to emanate from Ms. Cohen's washer, despite Ms. Cohen's compliance with all instructions and recommendations associated with the Product. Further, mold appeared on the inside of the front door, and has persisted to the present..

38.      The defects associated with the Product are an ongoing problem. When a Whirlpool repairman spoke with Ms. Cohen after she complained about the smell and mold in the machine, the repairman said, "You have to leave the door open. We know there's a problem."

39.      Defendant Whirlpool also mailed Ms. Cohen a letter earlier in 2008 informing her to purchase special tablets due to the odor and mold problems with its machines. Ms. Cohen purchased the tablets, which specifically state on the package they

are intended to eliminate the odor problem with the Whirlpool washing machines, but say

nothing about the mold problem. Ms. Cohen's Whirlpool washer currently has a

revolting and unacceptable buildup of dark mold on the bottom of the door.

## CLASS ACTION ALLEGATIONS

40.    Plaintiffs bring this action Pursuant to Rule 23(b)(2) and 23(b)(3) of the

Federal Rules of Civil Procedure, on behalf of themselves and two Classes defined as

follows:

(1)  All persons and entities residing in New York who purchased a Whirlpool
Duet or Duet Sport washing machine, which was not for resale purposes.

(2)  All persons and entities residing in the United States who purchased a
Whirlpool Duet or Duet Sport washing machine, which was not for resale purposes.

41.    Plaintiffs are members of the Classes they seek to represent. Members of

the Classes can be readily identified using Defendant Whirlpool's records of retail sales,

warranty data, and other information that are kept by Whirlpool in the usual course of

business and/or in the control of Whirlpool.

42.    Class members are so numerous that their individual joinder is

impracticable. The precise number of class members is unknown to Plaintiffs, but it is

clear that the number greatly exceeds the number to make joinder impossible.

43.    Common questions of law and fact predominate over the questions

affecting only individual class members. Some of the common factual and legal

questions include:

a.    Whether Defendant Whirlpool's Duet Products were defectively

designed, manufactured, marketed, distributed and sold;

b.    Whether Defendant Whirlpool knew or should have known that the

Duet Products were defectively designed, manufactured, marketed, distributed and sold;

c.      Whether Defendant Whirlpool knowingly concealed the defective nature of the Duet Products;

d.      Whether Defendant Whirlpool engaged in illegal business practices by failing to recall or sufficiently repair the Duet Products without charging the class members;

e.      Whether Defendant Whirlpool misrepresented the durability and usefulness of the Products;

f.      Whether, by the misconduct set forth herein, Defendant Whirlpool violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

g.      Whether, by the misconduct set forth herein, Defendant Whirlpool violated express and implied warranty statutes;

h.      Whether, by the misconduct set forth herein, Defendant Whirlpool violated the common laws of negligent misrepresentation and unjust enrichment;

i.      Whether, by the misconduct set forth herein, Defendant Whirlpool breached its duty of good faith and fair dealing; and

j.      The nature and extent of damages and other remedies to which the conduct of Defendant Whirlpool entitles the class members.

44.      Defendant Whirlpool engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the class members.  Similar or identical defective designs, statutory and common law violations, deceptive business practices, and defective Products are involved.  Individual questions pale by comparison to the

numerous common questions that dominate.

45.    The injuries sustained by the class members flow, in each instance, from a common nucleus of operative facts – Defendant Whirlpool's misconduct. In each case, Whirlpool designed, manufactured, supplied and/or sold defective Products.

46.    The class members have been damaged by Defendant Whirlpool's misconduct. The class members have purchased defective products. Many of the class members have undergone the expense of various ineffective self-remedies advised by the Defendant. Many of the class members have been required to prematurely pay for the repair of the defective Products due to the fact that the defective Products were unable to withstand their normal, foreseeable and intended usage. Many of the class members have been required to prematurely purchase a new properly-designed Product due to the fact that the defectively-designed Products were unable to withstand their normal, foreseeable and intended usage. Finally, many class members and their families have sustained collateral damage to their homes and/or personal property, and are susceptible to negative health consequences associated with the defective Products. The class members would not have purchased the Products had they known the truth about the Products.

47.    Plaintiffs' claims are typical of the claims of the other proposed class members. Each class member, including Plaintiffs, purchased a Product, manufactured by Defendant, that contained a defect causing the Product to generate and accumulate mold and to emit an unpleasant odor. Upon information and belief, these noxious effects are the result of the defective design and manufacture of the Products.

48.    Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs are familiar with the basic facts that form the basis of the proposed class

members' claims. Plaintiffs' interests do not conflict with the interests of the other class members she seeks to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the class members.

49.    The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the proposed class members. The relief sought per individual member of the Classes is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendant's conduct. Furthermore, it would be virtually impossible for the class members to seek redress on an individual basis. Even if the class members themselves could afford such individual litigation, the court system could not.

50.    Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the class members' claims and the absence of material differences in the state statutes and common laws upon which the class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Breach of Express Warranties)

51.     The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiffs on behalf of herself and members of the proposed Classes.

52.     Defendant Whirlpool expressly represented and warranted to Plaintiffs and members of the Proposed Classes, by and through statements, depositions, and affirmations of fact made by Defendant or its authorized agents or sales representatives, orally and in writing on Product packaging and in Product advertisements and marketing materials and other written materials intended for the general public, that the Products were durable, effective, and fit and proper for their intended use.  The aforementioned documents and others containing express warranties regarding Products and their usage were created by and at the direction of Defendant.

53.     In reliance upon these warranties, Plaintiffs and the proposed class members purchased and/or decided to continue ownership of the Products.

54.     At the time they made such express warranties, Defendant Whirlpool knew the purpose for which the Products were intended to be used and warranted the Products as effective and proper for such purchase.

55.     Defendant Whirlpool has received timely notice of the breach of warranties alleged herein.  Dozens of class members have, at a minimum, provided Defendant Whirlpool with notice of the defective Products by lodging formal complaints and requesting numerous service calls related to the defects.  In addition, many class members have vociferously complained about the mold and odor problems caused by the

Products, and related collateral effects, on various websites. These complaints bore an eerie similarity to the problems suffered by the class members in the Maytag Neptune litigation, of which Defendant Whirlpool knew or should have been aware. Thus, Defendant Whirlpool knew and had reason to know that the Products did not conform to its express representations because the Products are not as useable as Defendant Whirlpool represented.

56.    The Products did not conform to Defendant Whirlpool's promises, descriptions or affirmations of fact, nor were they fit for the ordinary purpose for which they were sold and used. Nevertheless, Defendant Whirlpool continued to market Products by means of false and misleading information without regard to their actual usability.

57.    As explained above, the Products were defective "in materials and workmanship" because of defects which caused them to generate large quantities of mold and emit a foul odor, both of which are transferred by the ordinary use of the Products to clothing and other laundry items. Thus, the Products also breached Defendant Whirlpool's standard Washer Warranty, including but not limited to its One-Year Full Warranty for all defects in materials or workmanship.

58.    Defendant Whirlpool's actions, as complained of herein, constitute a breach of express warranty, in violation of this State's common law, and the statutory and common law of other states.

59.    Defendant Whirlpool's conduct injured Plaintiffs and the members of the proposed Classes by breaching its express warranties, thereby causing them to pay a premium price for a Product that should not have been on the market, and which they

would not have purchased had they known that Defendant Whirlpool would breach its express warranties.

60.     Plaintiffs and the proposed class members have incurred damages as described herein as a direct and proximate result of the breach and failure of the Defendant Whirlpool to honor its express warranties.

**SECOND CAUSE OF ACTION**
**(Breach of Implied Warranties)**

61.     The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiffs individually and on behalf of all members of the proposed Class.

62.     Defendant Whirlpool sold and promoted the Products, which it placed into the stream of commerce.  Defendant knew or had reason to know of the specific use for which the Products were purchased, and it impliedly warranted that the Products were of merchantable quality and fit for such use.

63.     Plaintiffs and members of the proposed Classes reasonably relied upon the expertise, skill, judgment and knowledge of Defendant Whirlpool and upon its implied warranty that the Products were of merchantable quality and fit for their intended use.

64.     Through the conduct alleged herein, Defendant Whirlpool has breached the implied warranty of fitness for a particular purpose.  The defectively designed Products were not fit for the particular purpose for which they were purchased by class members to perform.  The class members purchased the Products for the particular purpose of cleaning their laundry and specifically for washing large loads in an efficient manner.  Defendant knew that the class members were purchasing the Products for this particular purpose and indeed marketed the Products as being fit for this particular

purpose.

65.    Plaintiffs and members of the proposed Classes relied on Defendant's misrepresentations by purchasing the Products.

66.    Defendant knew or had reason to know that Plaintiffs and members of the proposed Classes were influenced to purchase the Products through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

67.    The Products were not of merchantable quality and were not fit for their intended use because the design and/or manufacturing defects alleged herein often rendered them incapable of producing clean laundry free from unpleasant odors; the ordinary use of these Products further caused noxious side effects to Plaintiffs' and the class members' homes, and thereby engendered reasonable apprehension regarding their own health and well-being as well as that of their families.

68.    Defendant Whirlpool's actions, as complained of herein, breached their implied warranty that the Products were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and § 2-315) and the common law of this State, as well as the common law and statutory laws of other states.

69.    Plaintiffs and the proposed class members have incurred damages as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty.  In particular, Plaintiffs and the proposed class members would not have purchased the Products had they known the truth about their defects; nor would they have suffered the collateral effects and damages associated with these defects.

## THIRD CAUSE OF ACTION
### (Violation of New York's General Business Law § 349, *et seq.*, and Other State Consumer Protection, Deceptive Trade Practices, and Consumer Fraud Statutes)

70.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiffs individually and on behalf of all members of the proposed Class.

71.    Plaintiffs and members of the proposed Classes are consumers who purchased Products from Defendant Whirlpool Corporation for, *inter alia*, personal, family, or household purposes.

72.    Defendant had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of Products to Plaintiffs and the class members.

73.    Defendant violated this duty by misrepresenting the characteristics, uses, benefits, quality, durability, and usefulness of Products, and by omitting to disclose that the Products were defective, by failing to create and implement an adequate service program, and by failing to repair and replace defective Products when it learned of the defects.

74.    Plaintiffs and the proposed Classes were directly and proximately injured by Defendant's conduct and would not have purchased the Products had they known their true nature. As a proximate result of Defendant's conduct, the value of the Products has diminished, and Plaintiffs and the proposed class members have also suffered significant collateral damages.

75.    Defendant's deceptive representations and material omissions to Plaintiffs and the proposed members of the Classes were and are unfair and deceptive acts and

practices.

76.    Defendant engaged in wrongful conduct while at the same time obtaining, under false pretenses, significant sums of money from Plaintiffs and the proposed class members.

77.    As a proximate result of Defendant's conduct, Plaintiffs and the proposed class members have suffered an ascertainable loss and are entitled to relief in an amount to be determined at trial.

78.    Defendant's actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of New York's General Business Law § 349, *et seq.*, and corresponding statutes in other states.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

79.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiffs individually and on behalf of all members of the proposed Classes.

80.    Defendant Whirlpool made a series of misrepresentations and material omissions, as alleged herein, and including misrepresentations in its standard written warranty and otherwise that it would repair defective Products. Defendant's statements were material, false, deceptive, and misleading and omitted material facts necessary to make the statements not misleading; such material misrepresentations and omissions were the result of the Defendant's negligence.

81.    Defendant owed a duty to Plaintiffs and members of the proposed Classes to exercise reasonable care in making representations about the Products.

82.    Plaintiffs and the proposed class members relied (or should be presumed to have relied) on Defendant's material misrepresentations and omissions in purchasing the products.    As a result of their justifiable reliance, Plaintiffs and members of the proposed Classes were induced to and did purchase the Products.    Plaintiffs' reliance and the proposed class members' reliance was reasonably foreseeable by Defendant (and, in fact, that is why the Defendant made the misrepresentations that it did).

83.    As a direct and proximate result of the negligent misrepresentations made by Defendant, Plaintiffs and the proposed class members have been damaged.

### FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

84.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiffs individually and on behalf of all members of the proposed Class.

85.    To the detriment of Plaintiffs and members of the proposed Classes, Defendant has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, payments for the Products.

86.    Accordingly, Plaintiffs and members of the proposed Classes seek full restitution of Defendant's enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

### SIXTH CAUSE OF ACTION
### (Breach of Good Faith and Fair Dealing)

87.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiffs individually and on behalf of all members of the proposed Classes.

88. Defendant's actions injured the right of Plaintiffs and members of the proposed Classes to receive the benefits of the contract, in violation of New York common law and the common law of other states.

89. Plaintiffs and the proposed class members have incurred damages as described herein as a result of Defendant's breach of its duty of good faith and fair dealing.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the proposed class members request that the Court enter an order or judgment against Defendant Whirlpool including the following:

A. Certification of the action under the Federal Rules of Civil Procedure and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B. Damages in the amount of monies paid for the Products;

C. Damages in the amount of monies paid to repair or replace the Products, as well as monies paid for secondary products designed to address the unpleasant symptoms of the defects rather than the defects themselves;

D. Actual damages to the class members' homes and personal property directly associated with the use of the Products;

E. Actual damages related to deleterious health consequences directly associated with the use of Products, as well as prospective damages for the medical risks

engendered by this use and the class members' reasonable apprehension thereof;

F.    Actual damages, statutory damages, punitive or treble damages, and such other relief as provided for by relevant statutes;

G.    Prejudgment and post-judgment interest on any such monetary relief;

H.    Equitable relief in form of the restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the unfair, unlawful and/or deceptive conduct;

I.    Equitable and/or injunctive relief in the form of a Notice of Recall to be provided to Plaintiffs and members of the Classes;

J.    Other appropriate injunctive relief;

K.    The costs of bringing this suit, including reasonable attorneys' fees; and

L.    All other relief to which Plaintiffs and members of the proposed Classes may be entitled to at law or in equity.

Dated: August 15, 2008
        New York, New York

SANFORD WITTELS & HEISLER, LLP

By _____
Steven L. Wittels, SLW-8110
Jeremy Heisler, JH-0145
SANFORD WITTELS & HEISLER, LLP
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David W. Sanford, D.C. Bar No. 457933
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Avenue, N.W., Suite 310
Washington, D.C. 20009
Tel: (202) 742-7777
Fax: (202) 742-7776